## A. H. BOYDEN v. GEORGE ACHENBACH.

### *User of Way—Presumption of Grant.*

1. In an action for damages in closing up a way, to which the plaintiff claims a prescriptive right, it is necessary to show, not only that he used the same continuously for more than twenty years, but that the user was adverse and as of right.

2. In such case, where the plaintiff owner put up a fence on either side of the way to protect his land, and the defendant applied for and obtained the consent of said owner to put up an obstructing fence with gates for persons to pass through, but afterwards entirely closed up the way, *it was held*, that there was evidence of an adverse possessory use of the way in the plaintiff, and the same should have been submitted to the jury.

*Mebane* v. *Patrick*, 1 Jones, 23; *Smith* v. *Bennett*, Ib., 372; *Ray* v. *Lipscomb*, 3 Jones, 185, cited and approved.)

CIVIL ACTION tried at Spring Term, 1881, of ROWAN Superior Court, before *Seymour, J.*

The plaintiff appealed.

*Mr. John S. Henderson*, for plaintiff.
*Messrs. McCorkle* and *Bailey*, for defendant.

SMITH, C. J. The action is for damages in closing up a way, a prescriptive right to which the plaintiff claims, as annexed to land devised to him by his father, leading thence over an adjoining tract belonging to and in possession of the defendant, to a public road, and which has been in use by the plaintiff and his ancestors without hindrance until about the year 1858, for more than forty years. At the date mentioned, one Shaver, the preceding proprietor from whom the defendant derives his title, sent a messenger to the testator, (Nathaniel Boyden), to obtain his assent to the erection of a fence across the way or lane, then having fences along and on either side of it, and was refused; and

he was threatened with a suit if the way was thus ob-
structed, and the gates intended to admit the passing over
it as before, were kept under lock.   Thereupon the said
Shaver replied, the gates should not be fastened, and no
further objection being made, the fence was constructed
with gates and the way continued to be used by the testator
until the year 1873, when he died.   Thereafter the way was
entirely closed up and all passing over it obstructed.   The
testimony offered in support of the plaintiff's alleged pre-
scriptive right was of long use by his ancestors and himself,
extending back to the year 1842 at least, without permission
of, or interference from, the preceding owner of the defend-
ant's tract, as well as by many others, to whom the use was
convenient, until the putting up the fence with gates, under
the circumstances mentioned.

Upon this proof the court being of opinion that there
was no adverse user shown and the plaintiff had failed to
sustain his claim to the easement, and so intimating, the
plaintiff submitted to a nonsuit and appealed.

In the former appeal (79 N. C., 539) when the form of the
complaint left it uncertain whether the plaintiff was assert-
ing a private right of way, or a right held in common with
others, to use a road or public way, the exercise of which
had been obstructed by the defendant, READE, J., speaking
for the court, uses this language:   "In this country, where
land cannot be cultivated without being enclosed, it would
be a burden which farmers could not bear, if they had to
make lanes of every pathway which has been used on their
land for twenty years;" and the remark is not less appro-
priate to the claim set up in the present amended complaint.

It would be unreasonable to deduce from the owner's quiet
acquiescence, a simple act of neighborhood courtesy, in the
use of a way convenient to others, and not injurious to him-
self, over land unimproved or in woods, consequences so
seriously detracting from the value of the land thus used,

and compel him needlessly to interpose and prevent the enjoyment of the privilege in order to the preservation of the right of property unimpaired. And so it is declared in *Mebane* v. *Patrick*, 1 Jones, 23, and reiterated in *Smith* v. *Bennett*, Ib., 372, by the late Chief Justice, in his comments upon the charge that if the plaintiff had continuously, and without interruption, used and enjoyed the way for more than twenty years, he was entitled to recover. He says: "The charge is correct as far as it goes, but it does not go far enough. There is another and very essential requisite, in order to raise the presumption of a grant. *The user must be adverse and as of right.*" Again, in *Ray* v. *Lipscomb*, 3 Jones, 185, referring to those adjudications, he says: "These cases, as it seems to us, put the doctrine of presumption of a right of way from user on its true basis; and as was said in the argument, considering the state of things among us for many years past in regard to a neighbor's passing on the unenclosed land of another, either on horseback or with his wagon, any other conclusion would have resulted in great and general inconvenience."

There must then be some evidence accompanying the user, giving it a hostile character and repelling the inference that it is permissive and with the owner's consent, to create the easement by prescription and impose the burden upon the land. Was there any evidence of the adverse possessory use of the way to submit to the jury tending to prove the fact? In our opinion such evidence is furnished (how strong it is not our province to say), in the fact that the owner maintained a fence on either side of the way for the protection of his land, and left open the lane for the use of others, and when the defendant proposed to put up an obstructing fence with gates for persons to pass through, and asked the assent of the testator, Boyden, thereto, he recognized, though he may have made a mistake as to his rights in doing so, a legal claim in the owner of the plaintiff's

land, to have the way kept open for use as theretofore. This evidence, whatever may be its force, should have been submitted to the jury for their consideration, and in withdrawing it His Honor erred.

If there be *any evidence,* that is, evidence reasonably sufficient to authorize the jury to find the fact to which it is pertinent, it must be left to them to determine its credibility and its force and effect. For the error pointed out there must be a new trial, and it is so adjudged.

Error.                                                          *Venire de novo.*